UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **SAM BYRD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) Case No. 2:10-cv-0116 |
| | ) Judge Trauger |
| **v.** | ) |
| | ) |
| **ALPHA ALLIANCE INSURANCE** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

### MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 31), to which the plaintiff has responded (Docket No. 35), and the defendant has filed a reply (Docket No. 41). For the reasons discussed herein, the defendant's motion will be granted in part and denied in part.

### FACTUAL BACKGROUND

The plaintiff, Sam Byrd, held a homeowner's insurance policy with the defendant, Alpha Alliance Insurance Corporation ("ALFA"), for his home in Crossville, Tennessee.[1] The plaintiff's home was destroyed by a fire one week after he learned that the bank holding a first mortgage on the home was instituting foreclosure proceedings. He subsequently submitted a

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 32), the plaintiff's responses thereto (Docket No. 38), the plaintiff's statement of undisputed facts (Docket No. 37), the defendant's responses thereto (Docket No. 40), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

claim for the loss, and ALFA began to investigate the cause of the fire. While ALFA's fire investigator was able to trace the fire's origin to an oven located inside the plaintiff's kitchen, he was unable to determine the fire's cause, as prior to the investigator's arrival, the plaintiff destroyed a glass range that sat atop the oven. ALFA later denied the plaintiff's claim for fire loss. The present action arises from this series of events.

On June 13, 2009, the plaintiff was visited at his home by Ernie Elder, a representative of People's Bank in Crossville, Tennessee. People's Bank held a first mortgage on the plaintiff's home in the amount of approximately $180,000.00. The purpose of Mr. Elder's visit was to inform the plaintiff that People's Bank was beginning foreclosure proceedings due to his failure to make timely mortgage payments. One week after this visit, on June 20, 2009, a fire destroyed the plaintiff's home.

According to the plaintiff, the fire was accidental. He claims that, on the evening of June 20, 2009, he was in his kitchen using his Maytag oven, which also happened to have a glass top range. At some point while using the oven, he decided that he wanted to eat out, and turned the oven off. The plaintiff then left his home at approximately 8:30 p.m. that night and drove out to a nearby restaurant. However, he reached the restaurant only to learn that it was already closed. The plaintiff then decided to head back towards his home and stopped at a convenience store on the way to purchase some food. After making this stop, the plaintiff did not head straight home but, instead, spent approximately the next hour driving around listening to the radio and eating the food he had just purchased. When the plaintiff returned home, it was approximately 9:40 p.m.

Upon arriving home, the plaintiff walked into his garage, which was located adjacent to his kitchen. Upon entering the garage, the plaintiff smelled smoke and observed water coming out from underneath the door leading into the kitchen. At that point, the plaintiff decided to first remove his two cars from the garage before calling 911.

Two days later, on Monday, June 22, 2009, the plaintiff contacted ALFA to report the fire loss and make a claim. ALFA subsequently sent an adjuster, Mike Palmer, to meet the plaintiff and perform an investigation, wherein multiple photographs of the property were taken. Mr. Palmer also had a conversation with the plaintiff during his visit, although the content of that conversation is disputed by the parties. According to ALFA, Mr. Palmer told the plaintiff not to tamper with his home or its contents, since a fire investigator would be coming to examine the premises. The plaintiff, on the other hand, states that Mr. Palmer never told him that he could not touch or move anything inside his home. However, the plaintiff does concede that Mr. Palmer stated that ALFA "may" send someone out to examine the fire damage, particularly to the oven containing the glass top range.[2]

Sometime after Mr. Palmer's visit, the plaintiff used a shovel to pull the oven out from the kitchen wall and turned the oven over. In doing so, the glass top range shattered into pieces. According to the plaintiff, he turned the oven over so he could perform his own inspection of it, as he previously observed that the flames were centered on the oven when he entered his home during the fire.

---

[2] The plaintiff recounted this conversation in his sworn responses to the defendant's Request for Admissions. (Docket No. 31, Ex. 4, at 8.) In a subsequent affidavit supporting his opposition to the defendant's summary judgment motion, the plaintiff repeats that he was told by Mr. Palmer that ALFA "may" send another investigator to his home, although he omits any reference to the oven. (Docket No. 36 ¶ 3.)

Soon thereafter, on June 27, 2009, Gary Young, a fire investigator retained by ALFA, arrived at the plaintiff's home to inspect the premises. Mr. Young subsequently completed a fire investigation report detailing his findings. In his report, Mr. Young noted that the fire began in the plaintiff's kitchen and originated at the oven containing the glass top range. The report also notes that, upon Mr. Young's arrival, he found the oven pulled over on its top and the accompanying range shattered into pieces. Because the glass top range was shattered, Mr. Young was unable to determine the precise cause of the fire. According to ALFA, the plaintiff's actions in turning the oven over has impeded its investigation of the claim and interfered with its ability to make a finding as to how the fire began.[3]

The plaintiff commenced this action on October 22, 2010 in the Circuit Court for Cumberland County, alleging that ALFA breached the terms of the homeowner's policy by denying his fire loss claim. (Docket No. 1, Ex. 1.) ALFA subsequently filed a Notice of Removal on November 24, 2010. (Docket No. 1.) On December 2, 2010, ALFA filed its Answer and asserted a counterclaim against the plaintiff. (Docket No. 6.) The counterclaim specifically alleges that the plaintiff intentionally caused the fire loss underlying his insurance claim and that he should accordingly be required to reimburse ALFA for the amount it paid on

---

[3] This was not the first time the plaintiff's residence was destroyed by a fire. Indeed, in September of 1994, the plaintiff experienced another fire loss at the same address. The Cumberland County Fire Department found that the 1994 fire was suspicious. Moreover, after completing its own investigation, Tennessee Farm Bureau Insurance, the plaintiff's insurance carrier at the time, concluded that the fire was an act of arson.

the mortgages[4] attached to his property.[5] (*Id.* at 5-6.) The plaintiff filed his Answer to ALFA's counterclaim on March 30, 2011. (Docket No. 9.) The defendant then filed the present motion on October 28, 2011. (Docket No. 31.)

## ANALYSIS

### I.     Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a

---

[4] In addition to the first mortgage held by People's Bank, Union Bank held a second mortgage on the plaintiff's home. (Docket No. 33, at 2, n.1.)

[5] The plaintiff's insurance policy, as well as Tenn. Code Ann. § 56-7-804, required ALFA to pay the mortgages on the plaintiff's residence in the event of a loss, irrespective of the circumstances surrounding that loss.

5

scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II.     The Defendant's Motion

The defendant has moved for summary judgment on two grounds. First, ALFA contends that summary judgment is proper because the plaintiff failed to comply with the "cooperation clause" contained in the homeowner's insurance policy. Second, ALFA argues that the court should grant summary judgment because the plaintiff's destruction of the glass top range constituted spoliation of evidence. These contentions will be addressed in turn.

### A.     Failure to Comply with the "Cooperation Clause"

ALFA argues that dismissal of the plaintiff's case is warranted because he failed to cooperate with the defendant during its investigation into his fire loss claim. According to ALFA, the plaintiff violated the insurance policy's cooperation clause when, despite receiving instructions not to touch or move anything inside his residence, he nonetheless turned over the oven in his kitchen and destroyed its glass top range prior to the arrival of the defendant's fire investigator. The plaintiff asserts that summary judgment must be denied, because there is a genuine dispute of material fact concerning whether he cooperated with ALFA.

The defendant's argument concerning the "cooperation clause" in the plaintiff's homeowner's policy requires the court to analyze the contents of an insurance contract. As is the case with any other contract, under Tennessee law, courts are required to "give effect to the parties' intentions as reflected in their written contract of insurance." *Spears v. Tennessee*

*Farmers Mut. Ins. Co.*, 300 S.W.3d 671, 678 (Tenn. Ct. App. 2009). In undertaking this exercise, "the insurance policy should be construed as a whole in a reasonable and logical manner, giving the policy's terms, as written, their natural and ordinary meaning." *Id.* at 679. (internal citations omitted). "While language that is susceptible to more than one reasonable interpretation is ambiguous and should be construed in favor of the insured," if the policy's language is unambiguous and free from doubt, a court should favor neither party and should instead enforce the policy as written. *Id*. (internal citations omitted).

In *Shelter Ins. Cos. v. Spence*, the Tennessee Court of Appeals discussed the purpose of a cooperation clause, specifically noting that:

> The reason for including a cooperation clause in the policy and for conducting examinations pursuant to it is obvious enough. The company is entitled to obtain, promptly and while the information is still fresh, all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect them against false claims.

656 S.W.2d 36, 38 (Tenn. Ct. App. 1983) (*quoting Dyno-Bite, Inc. v. The Travelers Cos.*, 80 A.D.2d 471, 439 N.Y.S.2d 558, 560 (N.Y. App. Div. 1981) (internal quotation marks omitted). Courts in Tennessee have thus "consistently upheld clauses requiring insureds to cooperate with their insurance companies." *State Auto Ins. Co. v. Bishop*, No. M1998-00900-COA-R3-CV, 2000 WL 279940, at *4 (Tenn. Ct. App. Mar. 16, 2000). Tennessee courts view clauses requiring such cooperation as conditions precedent to recovering under the policy and "consider their viability 'so often sustained that the question should be considered at rest.'" *Id*. (*quoting Horton v. Employers' Liab. Assur. Corp.*, 164 S.W.2d 1016, 1017 (Tenn. 1942); *see also Spears*, 300 S.W.3d at 680 (noting that Tennessee courts have upheld cooperation clauses as a condition

7

precedent to an insured's exercising rights under the contract); *Linehan v. Allstate Ins. Co.*, No. 01A01-9308-CH-00387, 1994 WL 164113, at *4-5 (Tenn. Ct. App. May 4, 1994) (quoting *Horton* and also noting that Tennessee courts view cooperation clauses "as conditions precedent and, in the absence of waiver or estoppel, hold that a breach of the clause substantially affecting the insurer's interests constitutes a complete defense to liability under the policy."). In addition to showing a lack of cooperation, an insurer must also show prejudice in order to defeat liability under the policy. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 327-28 (6th Cir. 2000) (applying Tennessee law).

The homeowner's policy held by the plaintiff contained a section entitled "What you Must Do in Case of Loss or Claim." That section provided, in pertinent part:

> 2. **Cooperation** -- The "insured" must cooperate with "us" in performing all acts required by this policy.
>
> ....
>
> 5. **Other Duties** -- **Property Coverages** -- At "our" request the "insured" must:
>
> ....
>
> c. show the damaged property and allow "us" to take samples of damaged property for inspection, testing, and analysis as often as "we" reasonably request....

(Docket No. 31, Ex. 6, at 49-50.)

The plaintiff contends that the cooperation clause is ambiguous because it fails to define the level of cooperation required. The court disagrees and finds that the language of the policy is clear and unambiguous. The term "cooperate" is a not a term of art requiring a special definition but is, instead, a common word possessing a natural and ordinary meaning. Indeed, to cooperate

8

means "to work or act together or jointly for a common purpose or benefit." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 446 (2d ed. 1998). Pursuant to the policy's express terms, an insured is required to cooperate with the insurer in performing all acts required by the homeowner's policy. For claims specifically involving property loss, which is precisely the type of claim the plaintiff made in this case, the policy provides that an insured, upon an insurer's request, must cooperate with the insurer *by* showing the damaged property and allowing the insurer to take samples of that property as often as the insurer reasonably requests. Thus, for property loss claims, the policy's plain language unambiguously specifies the type of cooperation required from an insured - that is, showing the damaged property and allowing the insurer to take samples of that property. The plaintiff has presented no authority holding that a policy's failure to expressly define the level of cooperation required renders a cooperation clause ambiguous, and the court declines the invitation to make such a finding under the facts presented here.

The court next turns to the question of whether there is a genuine dispute of material fact concerning the plaintiff's compliance with the cooperation clause. ALFA argues that summary judgment is appropriate because the plaintiff turned over his oven and caused the glass top range to shatter into pieces, despite receiving explicit instructions from ALFA's adjuster, Mike Palmer, not to tamper with his home or any of its contents, since the company was sending a fire investigator to examine the premises. (Docket No. 32 ¶¶ 18, 22, 24.) Such conduct, argues ALFA, is a direct violation of the policy's language requiring the insured, upon request, to cooperate with the insurer by showing the damaged property and allowing the insurer to take samples of such property. According to ALFA, examination of the glass top range was critical,

as samples from the range would have been used to determine whether the fire was accidental or an act of arson. The plaintiff does not dispute that the destruction of the glass top range precluded the investigator from determining the cause of the fire. (Docket No. 32 ¶ 25; Docket No. 38 ¶ 25.)

The plaintiff, however, disputes the defendant's account of what Mr. Palmer instructed him to do. Indeed, in his affidavit, the plaintiff states that, during his initial investigation, Mr. Palmer never told him that he could not touch or move anything inside his home. (Docket No. 36 ¶ 3.) In addition, in his sworn responses to the defendant's Request for Admission, the plaintiff stated that Mr. Palmer only informed him that ALFA "may" send someone out to examine the fire damage, particularly to the oven containing the glass top range. (Docket No. 31, Ex. 4, at 8.) According to the plaintiff, he turned the oven over so he could perform his own inspection of it, as he had previously observed that the blaze was centered on the oven when he entered his home during the fire. (Docket No. 32 ¶ 23; Docket No. 38 ¶ 23.) Because he was never instructed by Mr. Palmer not to touch anything in his home or told that an investigator was definitely coming to examine the premises, the plaintiff argues that he did cooperate with ALFA, notwithstanding the fact that he turned over his oven prior to the investigator's arrival.

While it is undisputed that the plaintiff destroyed property damaged during the fire, and in doing so, prevented ALFA's investigator from determining the fire's cause, there remains a genuine dispute of material fact as to whether the plaintiff cooperated with the defendant under the terms of his homeowner's insurance policy. Under that policy, the plaintiff was required, *at the insurer's request*, to cooperate by showing the damaged property and allowing the insurer to take samples of that property. Because the plaintiff has produced evidence showing that he

never received such a request, the court finds that a reasonable jury could find that the plaintiff cooperated with the defendant under the terms of the policy. Accordingly, the defendant's motion for summary judgment as to this ground will be denied.

**B.     Spoliation of Evidence**

ALFA next moves for summary judgment seeking dismissal of the plaintiff's case due to his spoliation of key evidence. In particular, it argues that the plaintiff tampered with the oven containing the glass top range, despite receiving explicit instructions from Mr. Palmer to not move or touch any contents inside his residence. ALFA asserts that it has been prejudiced by the plaintiff's actions, because it was denied the opportunity to examine the glass top range, which was essential to determining whether the fire reported by the plaintiff was accidental or an act of arson. The plaintiff denies that he spoliated evidence but argues that, if the court were to find spoliation, dismissal of the case would be an incredibly harsh sanction in light of other available options.

A party seeking sanctions for spoliation must show: (1) that the party having control over the evidence had an obligation to preserve the evidence at the time it was destroyed; (2) that the evidence was destroyed "with a culpable state of mind;" and (3) "that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks omitted). In *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009), the Sixth Circuit, sitting *en banc*, determined that, notwithstanding state spoliation sanction standards, the federal district court has "broad discretion to craft proper sanctions for spoliated evidence." The Court of Appeals recognized that, "[b]ecause failures to produce

relevant evidence fall along a continuum of fault - ranging from innocence through the degrees of negligence to intentionality, the severity of a sanction may, depending on the circumstances of the case, correspond to the party's fault." *Id.* at 652-53 (internal quotation marks and citations omitted). Therefore, a proper spoliation sanction, which can range from dismissal of the case to an instruction that the jury "may infer a fact based on lost or destroyed evidence," will serve "both fairness and punitive functions." *Id.*

The court first considers whether the plaintiff had an obligation to preserve the oven containing the glass top range at the time it was destroyed. This question must be answered in the affirmative. "An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation." *Beaven*, 622 F.3d at 553 (internal quotation marks omitted). It is undisputed that the plaintiff turned over the oven and caused the glass top range to shatter after he filed a claim with his insurer and was visited by its adjuster, Mr. Palmer. (Docket No. 32 ¶¶ 17-18, 22, 24; Docket No. 38 ¶¶ 17, 22, 24; Docket No. 40 ¶ 7.) While the precise contents of Mr. Palmer's instructions to the plaintiff during his visit are disputed, the plaintiff does admit that Mr. Palmer told him that ALFA might send someone out to examine the fire damage to his home, particularly to the oven. (Docket No. 31, Ex.4, at 8.) Thus, at that time, the plaintiff knew, at the very least, that, in the course of investigating his claim, ALFA was interested in a particular piece of evidence (his oven), and that there was a possibility that ALFA might send someone to his residence to examine it. Moreover, the plaintiff himself was aware of the oven's importance in determining the fire's cause, as he had previously observed that the flames were centered on the oven when he entered his kitchen during the fire. (Docket No. 32 ¶ 23; Docket No. 38 ¶ 23.) Indeed, he claims that his own "investigation" of the source

of the fire was centered on the stove. The court finds that a reasonable insured acting under similar circumstances would have known that the oven may be particularly relevant to future litigation arising out of the fire loss claim.

Next, the court must determine whether the plaintiff destroyed the oven with a culpable state of mind. This factor "is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Beaven*, 622 F.3d at 554 (internal quotation marks omitted). Here, accepting the plaintiff's account of what Mr. Palmer instructed him as true, the court finds that this factor has been established. Indeed, shortly after he was told that ALFA was interested in his oven and that it might send someone to his home to inspect it, the plaintiff took a shovel and turned his oven over, thereby causing its glass top range to shatter into pieces. The plaintiff thus consciously destroyed evidence known to be of particular interest to his insurer prior to the possible arrival of one of its investigators. The plaintiff did so notwithstanding his own awareness of the oven's importance in determining the fire's cause. The plaintiff's conduct under these circumstances demonstrates his bad faith.

Finally, ALFA must show that the destroyed evidence was relevant to their claims or defenses. This element is also satisfied here. ALFA has defended this suit, in part, by contending that the plaintiff committed arson. The plaintiff's alleged arson is also central to ALFA's counterclaim. It is undisputed that the fire that destroyed the plaintiff's residence originated inside his kitchen at the oven containing the glass top range. (Docket No. 32 ¶¶ 16, 20; Docket No. 38 ¶¶ 16, 20.) Yet, it is also undisputed that ALFA was unable to inspect the glass top range and determine the fire's cause, because the plaintiff destroyed the range before the arrival of the defendant's investigator, Mr. Young. (Docket No. 32 ¶¶ 22, 24-25; Docket No.

13

38 ¶¶ 22, 24-25.) Plainly, a reasonable juror could infer that the destroyed glass top range was highly relevant to ALFA's arson defense and counterclaim. In addition, the fact that the plaintiff's conduct amounted to bad faith, as opposed to mere ordinary negligence, is sufficient, by itself, to demonstrate that the destroyed glass top range was relevant. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (noting that where a party seeking a spoliation sanction shows that its opponent destroyed potential evidence in bad faith or through gross negligence, that same evidence of the opponent's state of mind will frequently also satisfy the relevance requirement).

Having analyzed each of the relevant factors, the court concludes that a spoliation sanction is warranted in the present case. When exercising its broad discretion, a district court should craft an appropriate sanction that serves "both fairness and punitive functions." *Adkins*, 554 F.3d at 652. Where evidence is destroyed in bad faith, dismissal is an appropriate sanction. *See Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). While "[d]ismissal is the sanction of last resort" and is usually imposed after a court has considered less drastic sanctions, a "district court does not abuse its discretion in dismissing a case, even though other sanctions might be workable," if the facts support dismissal. *Id.* (internal quotation marks omitted).

Dismissal is an appropriate sanction under the facts presented here. Accepting the plaintiff's account of what Mr. Palmer instructed him as true, the court finds that the record evidence in this case demonstrates that the plaintiff destroyed an essential piece of evidence in bad faith after filing a claim for fire loss under his homeowner's insurance policy. This conduct is especially egregious given the already suspicious circumstances surrounding the fire -

including, among other things, its close temporal proximity (one week) to when the plaintiff received notice of his bank's intent to foreclose on his home.  (Docket No. 32 ¶¶ 1-4; Docket No. 38 ¶¶ 1-4.)

The plaintiff's conduct has also caused substantial prejudice to ALFA.  As explained above, because the plaintiff's actions prevented ALFA from inspecting the glass top range, a crucial piece of evidence in this case, it is impossible for the defendant to conclusively determine whether the fire was accidental or an act of arson.  Thus, ALFA is effectively precluded from establishing its arson defense and its counterclaim.  While it is true that, even without the spoliated evidence, the defendant might still successfully sustain its lack of cooperation defense at trial, that fact alone does not make the prejudice suffered here any less substantial.

The plaintiff contends that dismissal is an excessively harsh sanction in light of other available options.  For instance, it argues that the court could instruct the jury to draw an adverse inference with respect to the plaintiff's destruction of the glass top range.  While it is conceivable that an appropriate instruction to the jury could level the evidentiary playing field between the parties, the court believes that a harsher sanction is warranted in light of the plaintiff's egregious conduct.  Indeed, a less severe sanction may not effectively deter would-be spoliators from engaging in similar conduct in the future.  The plaintiff here has filed suit to recover on a claim for fire loss, notwithstanding the fact that he knowingly destroyed the single piece of evidence that was essential to determining whether the fire was accidental or an act of arson.  This extreme conduct warrants the drastic sanction of dismissal.  *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 593 (4th Cir. 2001) (stating that harsh sanction of dismissal is

justified when "the spoliator's conduct was so egregious as to amount to a forfeiture of his claim").

Accordingly, the court will grant the defendant's motion for summary judgment as to this issue, and the plaintiff's case will be dismissed.

### **CONCLUSION**

Based on the foregoing, the defendant's Motion for Summary Judgment (Docket No. 31) will be **GRANTED** in part and **DENIED** in part.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge